UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                           Case No. 05-C-302

APPROXIMATELY $16,943.00 IN
UNITED STATES CURRENCY and
ONE 1996 INFINITI Q45, VEHICLE
IDENTIFICATION NUMBER (VIN)
JNKNG01DXTM401120,
WITH ALL APPURTENANCES AND
ATTACHMENTS THEREON,

    Defendants.

**DECISION AND ORDER GRANTING SUMMARY JUDGMENT**

**I. PROCEDURAL AND FACTUAL BACKGROUND**

On March 21, 2005, the United States of America (the "government") commenced this civil action in rem under Title 21, United States Code, § 881(a)(4) and (6), seeking the forfeiture of all right, title and interest of Stevan W. Johnson ("Johnson") in the defendant properties, to wit, approximately $16,943.00 in United States currency and an Infiniti Q45 vehicle, with all appurtenances and attachments thereon.

The government alleges that the approximately $16,943.00 in United States currency was used or intended to be used in exchange for controlled substances, or represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of Title II of the Controlled Substance Act, 21 U.S.C. § § 801 et. seq., and is therefore subject to

forfeiture under Title 21, United States Code, Sections 881(a)(6). (Plaintiff's Proposed Findings of Fact ("PPFOF") ¶ 3.) Furthermore, the government alleges that the Infiniti Q45 vehicle was used, or intended to be used, to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance in violation of Title II of the Controlled Substance Act, 21 U.S.C. § § 801 et. seq., and is therefore subject to forfeiture under Title 21, United States Code, Sections 881(a)(4). (PPFOF ¶ 3.)

On March 22, 2005, the defendant properties were seized by the United States Marshal Service pursuant to a March 21, 2005 Warrant for Arrest (PPFOF ¶ 5.) The market value of the 1996 Infiniti Q45 as of July 28, 2005 was $4,525.00 (PPFOF ¶ 4.) On March 27, 2005 the legal Notice for Forfeiture of the defendant properties was published in the Milwaukee Journal Sentinel. (PPFOF ¶ 6.) On April 20, 2005, Stevan W. Johnson ("Johnson") filed a claim to the defendant properties (PPFOF ¶ 7.) On May 18, 2005, Johnson filed an answer to the forfeiture complaint (PPFOF ¶ 8.)

On July 14, 2006, the government filed a motion for summary judgment. That motion has now been fully briefed and is ready for resolution. For the reasons which follow, the government's motion for summary judgment will be granted.

The circumstances surrounding the forfeiture complaint stem from a search of Johnson's residence on October 6, 2004 and his subsequent arrest. The following proposed facts by the government are not disputed by Johnson. On October 5, 2004, the government obtained a "no knock" narcotics search warrant for the residence of Stevan Johnson in Wauwatosa, Wisconsin. (PPFOF ¶ 9.) On October 6, 2004, officers executed the warrant at Johnson's residence. (PPFOF ¶ 10.) Officers discovered the following items located throughout the residence: a plastic baggie containing approximately 22.0 grams of suspected crack cocaine; a prescription bottle containing .5

grams of suspected crack cocaine; a plastic baggie containing approximately 24.4 grams of suspected marijuana; a plastic baggie containing approximately 28.0 grams of suspected marijuana; a hand held scale; a digital scale; three 150-count boxes of plastic baggies; two boxes of "ChoreBoy"; a Kleenex box with plastic baggies; a plastic baggie with white residue; a plastic baggie with suspected marijuana residue; a marijuana pipe; six empty crack pipe boxes; sixteen unused crack pipes; ten butane lighters; three used crack pipes; a loaded .22 caliber Winchester rifle; two 22 caliber bullets; $660 in counterfeit bills of United States currency; $800 in partially completed counterfeit bills of United States currency; 27 counterfeit 37 cent stamps; book making documents; gambling records; and $16,943.00 in United States currency. (PPFOF ¶ 10.)

The officers also seized various financial records and other documents on October 6, 2004. These included a letter detailing the distribution of the estate of Johnson's parents, and statements for 2 investment accounts held in the name of Stevan W. Johnson at US Bancorp Piper Jaffray. (PPFOF ¶ 13-15.)

Johnson was arrested following the execution of the search warrant and transported to the Wauwatosa Police Department. (PPFOF ¶ 11.) After waiving his rights he spoke with officers regarding the circumstances of his arrest. Johnson disputes the accuracy of these statements as they are reported in the proposed findings of fact and in the State criminal complaint charging him with a drug distribution offense.

On October 10, 2004 Johnson was charged in a criminal complaint by the State of Wisconsin in Milwaukee County with possession with intent to deliver cocaine. (PPFOF ¶ 16.) Johnson pled guilty and on November 9, 2004, was sentenced to 42 months probation with 7 months in the House

of Correction as a condition of probation. A two year prison sentence and four years supervised release were imposed and stayed. (PPFOF ¶ 16.)

## II. DISCUSSION

**A. Summary Judgment Standard**

A district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary Judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). To state it differently, "[a] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).

4

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (quoting *Anderson,* 477 U.S. at 255). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith*, 129 F.3d at 425). "The evidence must create more than 'some metaphysical doubt as to the material facts.'" *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (quoting *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 477 (7th Cir. 1995)). A mere scintilla of evidence in support of the nonmovant's position is insufficient. *Id.* (citing *Anderson*, 477 U.S. at 252).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**B. Forfeiture Analysis**

Title 21 U.S.C. § 881(a)(4) and (6) provides for the forfeiture of property to the United States under certain circumstances:

> (a) **Subject Property.** The following shall be subject to forfeiture to the United States and no property right shall exist in them:
>
> . . . .
>
> (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1), (2), or (9).

5

   (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

21 U.S.C. § 881(a)(4) and (6).

Property described in paragraphs (1), (2), and (9) include:

   (1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this title.

   (2) All raw materials, products, and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance or listed chemical in violation of this title.

   . . . .

   (9) All listed chemicals, all drug manufacturing equipment, all tableting machines, all encapsulating machines, and all gelatin capsules, which have been imported, exported, manufactured, possessed, distributed, dispensed, acquired, or intended to be distributed, dispensed, acquired, imported, or exported, in violation of this title or title III.

21 U.S.C. § 881(a)(1), (2), and (9)

   The Civil Asset Forfeiture Act of 2000 ("CAFRA") applies to all civil forfeiture actions commenced after August 23, 2000. Included in CAFRA are the procedural provisions of 18 U.S.C. §§ 983, which govern civil forfeiture actions. Under the statute, the Government has the burden of proof to establish by a preponderance of the evidence that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1). The "preponderance of the evidence" standard replaced the lesser standard of "probable cause" used by the Seventh Circuit prior to CAFRA. *See United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 454 (7th Cir. 2005). Meeting this burden of proof requires showing that some event or fact is more likely than not. *See United States v. Saulter*, 60 F.3d 270, 280 (7th Cir. 1995).

In determining whether the preponderance of the evidence standard has been met, "the court should look at the totality of the circumstances." *United States v. United States Currency Deposited In Account No. 1115000763247*, 176 F.3d 941, 944 (7th Cir. 1999); *see also United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 455 (7th Cir. 2005). The government may rely on direct and circumstantial evidence. *United States v. All Assets and Equip. of West Side Bldg. Corp.*, 58 F.3d 1181, 1188 (7th Cir. 1995). The government may also "use evidence gathered after the filing of a complaint for forfeiture to establish . . . that property is subject to forfeiture." 18 U.S.C. § 983(c)(2). If the government alleges that property was used to facilitate the claimant's drug activities, "the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). Although the Seventh Circuit has not specifically detailed the "substantial connection" test, the Fourth Circuit has stated that under this test "the property either must be used or intended to be used to commit a crime, or must facilitate the commission of a crime. At a minimum, the property must have more than an incidental or fortuitous connection to criminal activity." *United States v. Schifferli*, 895 F.2d 987, 990 (4th Cir. 1990).

After the government has met its burden, "the ultimate burden shifts to the claimant to prove by a preponderance of the evidence that the property is not subject to forfeiture . . . by demonstrating that the property was not used in connection with drug activities." *All Assets & Equip.*, 58 F.3d at 1189. If the claimant is unable to rebut the government's proof, the government's initial showing alone will support a judgment of forfeiture. *Id*.

In the case at hand, the claimant argues that there is a material issue of fact as to whether the currency seized from Johnson's residence is subject to forfeiture under 21 U.S.C. § 881(a)(4) and (6). (Cl.'s Resp. to Mot. for Summ. J. ¶ 1). Johnson asserts that the money which the government claims

7

is subject to forfeiture did not derive in part or in whole from drug activities, but were rather part of the $200,000 inheritance he received in 1998 from his parents. (Johnson Aff. ¶ 6). The claimant states that he used these inheritance funds to open an investment account with Piper Jaffrey & Co., and that he has supported himself through income earned in connection with this account. (Cl. Resp. to Inter. # 4 and #5). Johnson further states that he has received Social Security payments for the past two and a half years of approximately $590.00 per month. (Cl. Resp. to Inter. # 4). The claimant argues that the defendant currency found in his residence had been removed by him from a safety deposit box at Chase Bank. (Johnson Aff. ¶ 6).

Johnson objects to certain proposed findings of fact, specifically his purported post-arrest statements recounted in proposed findings of fact 11 and 12, which concern the source of the monies seized from his residence on October 6, 2004. (Cl. Resp. to PPFOF ¶ 1.) Johnson also objects to the use of these statements in the criminal complaint by which he was charged in Case No. 04-CF-5151. (Johnson Aff. ¶ 2.) He claims that these statements were not accurately reported. Johnson further asserts that he has been unable to answer questions regarding his finances with complete precision because he has not had access to any of his financial records since their initial seizure. (Johnson Aff. ¶ 5.)

Finally, Johnson has invoked his rights under the Fifth Amendment in refusing to answer certain interrogatories regarding controlled substances, drug paraphernalia, counterfeit currency, and bookmaking documents that were seized in his residence. (Cl. Resp. to Inter. #4 and #13). He has also declined to answer details about his alleged history of drug dealing on Fifth Amendment grounds. (Cl. Resp. to Inter. #14). Notably, Johnson has not specifically objected to any of the government's assertions regarding the forfeiture of the Infiniti Q45.

8

In support of its motion for summary judgment, the government offers Johnson's *Mirandized* statements after his arrest, information regarding the various financial documents seized in Johnson's residence, the fact that Johnson invoked the Fifth Amendment when asked about illegal drug activities in his interrogatories, and information regarding the drugs and drug-related materials found in his residence.

According to the government, Johnson spoke to officers about the circumstances surrounding his arrest after waiving his rights. (PPFOF ¶ 11). These statements are reported by the sworn declaration of Officer James Short, who for the past eleven years has been employed as an officer with the Wauwatosa Police Department, and has approximately fourteen years of law enforcement experience. According to his post-arrest statements, Johnson was introduced to crack cocaine in 1998, and his initial occasional use quickly turned into a daily habit. Johnson estimated that he spent about $300-$350 per day on crack cocaine. Johnson stated he needed to find a way to fund his drug expenses due to his unemployment and the need to pay for his habit. He thus started to sell crack cocaine to pay his drug expenses, and had 5 or 6 regular customers to whom he would typically sell $20 worth of crack cocaine daily. Johnson admitted he would obtain 1-2 ounces of cocaine for $900-$2000 per week from his supplier, a dealer on the north side of Milwaukee. He would drive his 1996 Infiniti Q45 to meet with the supplier, and the deals occurred inside the vehicle. Johnson would then drive the vehicle back to his residence and prepare the crack cocaine for sale. The sales would typically take place either in his living room where he had wireless surveillance cameras, in an alley at the back of his residence, at the customer's residence, or at a pre-arranged meeting place. Johnson would also use his vehicle to deliver the cocaine to his customers' residences or to the pre-arranged meeting places. (PPFOF ¶ 11.)

9

Case 2:05-cv-00302-WEC   Filed 09/27/06   Page 9 of 19   Document 45

Johnson also admitted making the counterfeit currency that was found in his residence, but stated that he did it as a practical joke. (PPFOF ¶ 12.) He further stated that he had been involved in bookmaking for the past 4-5 years, and had around 40-50 betting customers. Depending on the week, he could be up a few thousand dollars or down a few thousand dollars from his bookmaking. Johnson stated that he believed he had around $14,000.00 hidden upstairs in his residence, with approximately 25% coming from drug dealing and 25% from bookmaking. He did not respond to questions regarding the source of the other 50% of the money. (PPFOF ¶ 12.)

During the course of entering his guilty plea in the underlying state criminal case, Johnson agreed that the factual statements set forth in the criminal complaint were basically true and correct and that they served as a factual basis for the plea. (Pl. Ex. C at 10.) The criminal complaint contained Johnson's admissions that half of the $16,493.00 was derived from drug trafficking and illegal bookmaking. (Pl. Br. at 6.)

Officer Short reviewed the financial documents seized from Johnson's residence on October 6, 2004. (PPFOF ¶ 13.) These documents include a letter dated July 9, 1998 from Barnett Bank addressed to Johnson and his four siblings detailing the distribution of the 3 accounts held in his parents' estate. (PPFOF ¶ 14; Ex. 2.) The letter states that the estate totaled approximately $1,380,000.00, less taxes and expenses, and that this money would be distributed in equal shares to Johnson and his siblings. A one-fifth share in the estate would be approximately $276,000.00, less taxes and expenses. (PPFOF ¶ 14.)

The government also seized statements for 2 investment accounts in the name of Stevan W. Johnson at US Bancorp Piper Jaffray (PPFOF ¶ 15; Ex. 3-7.) These statements indicate a diminishment in the accounts over a period of years. In 1999, the year-end statement for the accounts

10

reflected a portfolio net worth of $269,264.27. (Ex. 3.) The 2000 year-end statement reflected a portfolio net worth of $89,218.48. (Ex. 4.) The 2001 year-end statement reflected a portfolio net worth of $50,707.01. (Ex. 5.) The 2002 year-end statement reflected a portfolio net worth of $2,558.55. (Ex. 6). The May 31, 2003 statement reflected a portfolio net worth of $39.78. (Ex. 7).

In addition to relying on Johnson's *Mirandized* statements and the seized financial documents, the government also argues that an adverse inference should be drawn from Johnson's invocation of the Fifth Amendment. The government cites *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976), to support its proposition that adverse inferences may be drawn against a party in a civil case who invokes the Fifth Amendment privilege.

In the case at hand, the government has met its burden of establishing by a preponderance of the evidence that the defendant properties are subject to forfeiture. Simply stated, there is sufficient evidence to support the government's contention that the seized money derived from drug trafficking, and that the vehicle had a substantial connection to drug activities.

Johnson pled guilty to and was convicted of possession with intent to deliver cocaine. The government may rely on Johnson's underlying drug conviction to make its required showing. *See United States v. All Right, Title & Interest in Real Property etc.*, 901 F.2d 288, 292 (2nd Cir. 1990) ("the conduct underlying the conviction establishes probable cause supporting the forfeiture"); *United States v. "Monkey,"* 725 F.2d 1007, 1010 (5th Cir. 1984); *United States v. $87,118.00 in United States Currency*, 95 F.3d 511, 518 (7th Cir. 1996); *All Assets & Equip.*, 58 F.3d at 1189 ("Evidence of prior convictions for drug possession or trafficking is certainly admissible in a probable cause determination."). The government may also rely on Johnson's guilty plea. *See*

11

*United States v. 415 E. Mitchell Ave.*, 149 F.3d 472, 476 (6th Cir. 1998) (guilty plea alone is sufficient to establish probable cause).

Furthermore, the government may rely on the statements that Johnson made during the course of his guilty plea. *See 415 E. Mitchell Ave.*, 149 F.3d at 476 (claimant admitted in his guilty plea that the facts underlying the offense involved the cultivation of drugs at his residence); *Adames v. United States*, 171 F.3d 728, 733 (2nd Cir. 1999) ("A criminal defendant's self-inculpatory statements made under oath at his plea allocution 'carry a strong presumption of verity'. . . and are generally treated as conclusive in the face of the defendant's later attempt to contradict them" (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). During the course of his guilty plea Johnson stated that all of the facts in the complaint were basically true and correct. Indeed, within the complaint were allegations that Johnson had stated that 50% of the defendant money was from drug activities and bookmaking.

The government may also rely on the statements Johnson made to the officers after his arrest, and which formed part of the basis for the criminal complaint. These statements were reported by Officer James Short, who has submitted a sworn declaration setting forth in detail the statements made to him by Johnson. According to Officer Short, Johnson provided detailed descriptions of his drug activities, including his weekly sales and expenditures. Johnson also provided details to the officers of how his Infiniti Q45 was involved with his drug trafficking activities. Finally, Johnson admitted to the officers that there was approximately $14,000.00 hidden upstairs in his residence, and that 25% of this money was derived from his drug trafficking.

The factual circumstances of the case also support the government's forfeiture claim. Officers discovered $16,943.00 hidden upstairs in Johnson's residence, an unusually large amount of cash, to be sure. Drugs and drug paraphernalia were also found in the residence in relatively close

12

proximity to the hidden cash, and in very close proximity to counterfeit money. Courts have used similar evidence to find that the government has met its burden of establishing by a preponderance of the evidence that the defendant property is subject to forfeiture. *See United States v. 84,615 in United States Currency,* 379 F.3d 496, 501 (8th Cir. 2004) (government demonstrated, by preponderance of evidence, a substantial connection between claimant's money and drug trafficking because possession of large amount of cash and claimant possessed illegal drugs at time of money discovery was strong evidence of a connection).

Finally, the government has provided documentation to demonstrate that Johnson has no other source of income to explain the existence of the defendant currency. More precisely, Johnson has filed no tax returns since 2000, and has not been employed for the past five years. To be sure, Johnson claims that the defendant currency derives from his Piper Jaffray Investment Account. But, financial documents from this account contradict this assertion. Financial statements from this account show a minimal balance in May 2003, and a steadily declining balance in each previous year. Indeed, as of the end of 2002, the Piper Jaffray Investment Account did not contain sufficient funds for a $16,943.00 withdrawal. This lack of funds would certainly seem to corroborate Johnson's statement to officers that he started selling crack cocaine to pay for his use of the drug.

In light of the foregoing, the government has met its burden of showing by a preponderance of the evidence that the defendant currency and the defendant vehicle are subject to forfeiture. More precisely, the government has established by a preponderance of the evidence that it is more likely than not that the defendant currency was derived from drug activities and that the defendant vehicle was substantially connected to drug activities. Thus, the burden shifts to Johnson to present definite,

competent evidence to rebut the government's properly supported summary judgment motion. *See EEOC v. Sears, Roebuck & Co.,* 233 F.3d at 437.

Johnson argues that the $16,943.00 was part of the inheritance he received from his mother in 1998. He states that on October 4, 2004, the cash had been removed from a safety deposit box in the State Street branch of Chase Bank, and that the money in the safety deposit box was the balance of the money inherited from his parents. Johnson further states that he withdrew the cash because he was in the process of purchasing an apartment building, and the cash was to be used towards the purchase price. (Cl. Resp. to Sec. Set of Inter. #2.)

Johnson further claims that his post-arrest statements to officers were not accurately reported either in the proposed findings of facts or in the criminal complaint. (Johnson Aff. ¶ 3.) In regards to the criminal complaint, Johnson avers that he told the state trial judge that the facts were "basically true and correct" because he and his attorney believed that a factual basis for the plea existed regardless of the inaccuracy of the post-arrest statements as reported in the complaint. (Johnson Aff. ¶ 4.) Johnson states that he did not point out these inaccuracies because they did not affect the court's finding that a factual basis for the plea existed.

Although Johnson's admissions as reported in Officer Short's declaration and in the criminal complaint are not necessarily dispositive, Johnson has nevertheless failed to rebut these statements with any evidence other than a general denial of their accuracy. In general, "self-serving affidavits without factual support in the record will not defeat a motion for summary judgment." *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993). Moreover, "[a] party cannot create an issue of fact by submitting an affidavit whose conclusions contradict prior testimony." *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998). In the case at hand,

14

Johnson's post-arrest statements were reported by a sworn police officer, and Johnson implicitly reaffirmed these statements during the taking of his guilty plea. Johnson's affidavit attempts to contradict these prior admissions without any factual support. Simply stated, Johnson cannot create an issue of fact simply by providing an excuse for not pointing out inaccuracies during the earlier plea hearing.

To be sure, Johnson's statement during the course of his guilty plea hearing that the facts in the criminal complaint were "basically true and correct" does not carry the same weight as would statements in a plea hearing explicitly admitting in detail to a connection between drugs and the defendant property. Furthermore, Johnson's unsworn statements to the officers after his arrest might not carry the same weight as would statements made under oath. Nevertheless, even without these admissions by Johnson, the undisputed evidence would still support a finding of forfeiture.

To reiterate, although Johnson has documentation showing that he received a large inheritance from his mother in 1998, he has failed to provide evidentiary support for the proposition that this money was still in existence at the time he allegedly withdrew cash from his Chase Bank deposit box. To the contrary, the only extant documentation relating to his inheritance are the year-end statements from Piper Jaffray reflecting a steep decline in the portfolio net worth. Based on these documents, Johnson's alleged source of legitimate income could not account for a $16,943.00 withdrawal. *See United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 466 (7th Cir. 2005) ("Evidence of legitimate income that is insufficient to explain the large amount of property seized, unrebutted by any evidence pointing to any other source of legitimate income or any evidence indicating innocent ownership, satisfies the burden imposed by [§ 881(a)(6)].") (quoting *United States v. 174,206.00 in United States Currency*, 320 F.3d 658,

15

662 (6th Cir. 2003). To be sure, Johnson claims that he has lacked access to his financial records and has thus been unable to answer financial questions with any measure of precision. This contention, even assuming it to be true, fails to justify the lack of any explanation for the disparity between the paltry amount of his inheritance funds remaining in the Piper Jaffray account at the end of May 2003 (i.e., $39.78) and the amount of money seized. It also fails to explain why he could not have obtained documentation from the bank showing his claimed accessing of a safety deposit box.

Furthermore, although Johnson contests the accuracy of certain post-arrest statements as reported in the criminal complaint, the simple fact remains that he nevertheless admitted at his plea hearing that there was a factual basis for the plea irrespective of these inaccuracies. Such being the case, even without the admissions regarding the source of his income, there is substantial evidence that Johnson participated in drug trafficking activity. Indeed, although in this civil action Johnson has invoked the Fifth Amendment rather than answer directly questions relating to his drug activity, the physical evidence found in his residence and his subsequent guilty plea based on the underlying facts support the government's contention that Johnson is a drug trafficker. As stated by the Seventh Circuit, "where a defendant's verifiable income cannot possibly account for the level of wealth displayed and where there is strong evidence that the defendant is a drug trafficker, then there is probable cause to believe that the wealth is either a direct product of the illicit activity or that it is traceable to the activity as proceeds." *United States v. Edwards*, 885 F.2d 377, 390 (7th Cir. 1989).

In sum, the government has met its burden of demonstrating by a preponderance of the evidence that the $16,943.00 found in the residence constituted "moneys . . . furnished or intended to be furnished by any person in exchange for [cocaine] . . . [or] proceeds traceable to such an exchange" in violation of 21 U.S.C. § 881(a)(6). Johnson's challenge to his alleged post-arrest

16

admissions and his pointing to his inheritance money as his legitimate source of income are not definite, competent evidence precisely because they are not supported by any specific facts. In other words, the claimant has failed to produce sufficient evidence to rebut the government's proof that this money was used in connection with drug activity or was proceeds from drug activity.

To reiterate, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Simply stated, Johnson has failed to make a sufficient showing to establish his claim. Stated another way, Johnson has failed to produce sufficient evidence from which a reasonable trier of fact could find by a preponderance of the evidence that the defendant money was not forfeitable as drug proceeds. "The standard governing summary judgment is clear: '[I]f no rational jury could, on the evidence presented in the summary judgment proceeding, bring in a verdict for the party opposing summary judgment . . . then summary judgment *must* be granted.'" *Oates v. Discovery Zone,* 116 F.3d 1161, 1175 (7th Cir. 1997) (quoting *Visser v. Packer Eng'g Assoc., Inc.*, 924 F.2d 655, 660 (7th Cir. 1991)).

Turning to the defendant vehicle, it is clear that a vehicle used to transport or facilitate the sale or receipt of cocaine is subject to forfeiture under 21 U.S.C. § 881(4). Johnson admitted in his alleged post-arrest statements that the defendant vehicle was used to transport cocaine from his supplier to his residence, and that the deals took place inside his vehicle. He also admitted that he sometimes used the vehicle to deliver cocaine to customers' houses or other pre-arranged meeting locations.

17

Case 2:05-cv-00302-WEC   Filed 09/27/06   Page 17 of 19   Document 45

Johnson has failed to provide evidence to rebut the proof offered by the government through his post-arrest admissions and the physical evidence implicating him as a drug trafficker. In his affidavit Johnson once again asserts that his post-arrest admissions were reported inaccurately, but he has provided no evidence to demonstrate that the vehicle is not forfeitable. This amounts to a bare denial, and is insufficient to create a material issue of fact. Given the explicit details given to the officer regarding how the vehicle was used to facilitate drug activities, and given the physical evidence of his drug trafficking activities found in his residence, Johnson must provide more than a general statement that his admissions contained inaccuracies in order to sustain his burden of proof. This he has not done.

In sum, the government has met its burden of demonstrating by a preponderance of the evidence that the Infiniti Q45 was "used, or...intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of" a controlled substance, in violation of 21 U.S.C. § 881(a)(4). Johnson has failed to set forth specific facts which rebut the government's proof that the vehicle was substantially connected to drug activities.

In conclusion, and for all of the foregoing reasons, the government's motion for summary judgment will be granted.

**NOW THEREFORE IT IS ORDERED** that the plaintiff's motion for summary judgment be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that all right, title and interest of Stevan W. Johnson to and in the defendant United States currency in the amount of approximately $16,943.00 and to and in the defendant vehicle, one 1996 Infiniti Q45, Vehicle Identifiaction Number JNKNG01DXTM401120, be and hereby is forfeited to the United States of America pursuant to 21 U.S.C. § 881(a)(4) and (6);

18

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

**SO ORDERED** this 27th day of September 2006, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge